[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2009
THOMAS K. KAHN
CLERK

No. 08-13135
Non-Argument Calendar
_____

Agency No. A98-858-349

HIMILCE ROSA BARROETA VILLAVICENCIO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 22, 2009)

Before TJOFLAT, DUBINA and ANDERSON, Circuit Judges.

PER CURIAM:

Himilce R. Barroeta Villavicencio petitions for review of the Bureau of Immigration Appeals's ("BIA's") decision affirming the Immigration Judge's ("IJ's") order finding her removable and denying her application for withholding of removal.

As an initial matter, when an applicant fails to offer argument on an issue, that issue is abandoned. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). In her brief, Villavicencio fails to offer argument on her claims of asylum and CAT relief. Accordingly, she has abandoned these issues, and we will address only her claim for withholding of removal relief under the INA.

I.    **Credibility of Villavicencio's Testimony**

Villavicencio argues that the IJ failed to make an express credibility finding and, as a result, we may assume that any credibility determinations made by the IJ were not dispositive. She also notes that the BIA failed to address the IJ's failure to make an express credibility finding. She asserts that the IJ implicitly made a favorable credibility finding and argues that, because her testimony was consistent with her asylum application and supplements, and was internally consistent and plausible, this favorable credibility finding is entitled to great weight.

When considering a petition to review a BIA final order, we review legal issues de novo. Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1339 (11th Cir. 2008). The BIA's factual findings are reviewed under the substantial evidence test.

2

Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001). Under this test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284. "To reverse a factual finding by the BIA, we must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001). We review only the BIA's decision, except to the extent the BIA expressly adopts the IJ's opinion or reasoning. Al Najjar, 257 F.3d at 1284. Here, the BIA did not expressly adopt the IJ's order, so we review only the BIA's order.

We review credibility determinations under the substantial evidence test. Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230-31 (11th Cir. 2006). "The trier of fact must determine credibility, and [we] may not substitute [our] judgment for that of the BIA with respect to credibility findings." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). In fact, we will reverse the IJ's credibility findings "only if the evidence compels a reasonable fact finder to find otherwise." Chen, 463 F.3d at 1231 (internal quotations omitted). The BIA must make "clean determinations of credibility," and, to be considered an adverse credibility determination, the fact finder must state explicitly that the applicant's testimony was not credible. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (holding that the IJ failed to make an explicit credibility determination, despite her

3

statements that the petitioner's claims were a "ridiculous fabrication" and were "extremely inconsistent and [made] absolutely no sense whatsoever."). If the BIA fails to make an explicit adverse credibility determination, we accept the petitioner's testimony as credible. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257 (11th Cir. 2007).

Because the BIA, in its order, did not make an explicit credibility determination, we accept Villavicencio's testimony as credible. See id.

## II.     Villavicencio's Withholding of Removal Claim

Villavicencio argues that the kidnaping incident about which she testified establishes that she suffered past persecution, because her life was threatened and she was kidnaped at gunpoint. She argues that the BIA erred by requiring a showing of physical harm, and that the BIA should have considered the cumulative effect of the kidnaping, death threats, home invasion, and murder of her cousin. She asserts that because she was persecuted by the Venezuelan State, it is unreasonable to assume that she could safely relocate to another area of the country. She also points out that although she was unharmed when she visited her parents between the summer of 1999 and the summer of 2002, when she returned to Venezuela to attempt to resume her life there, her parents' home was invaded, and death threats were left only four months after her arrival.

4

Under the INA, an alien shall not be removed to her country of origin if her life or freedom would be threatened in that country on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). "The alien bears the burden of demonstrating that it is more likely than not that she will be persecuted or tortured upon being returned to her country. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (internal quotations omitted). An alien may satisfy her burden of proof in two ways. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). "First, an alien may establish 'past persecution in [her] country based on a protected ground.'" Id. Second, "[a]n alien who has not shown past persecution . . . may still be entitled to withholding of removal if [s]he can demonstrate a future threat to [her] life or freedom on a protected ground in [her] country." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437 (11th Cir. 2004).

If the petitioner establishes past persecution, it is presumed that her life or freedom would be threatened upon a return to that country unless the government shows by a preponderance of the evidence that, among other things, the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon her deportation or removal. 8 C.F.R. § 208.16(b); Tan, 446 F.3d at 1375. "The regulations are clear that where an applicant has established past persecution," the burden of establishing changed conditions or the possibility

5

of internal relocation "lies with the [DHS]." Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1264 (11th Cir. 2004).

Neither the INA nor the regulations define "persecution," but we have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation . . . mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (internal quotations omitted). "Not all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000). For example, menacing telephone threats do not rise to the level of past persecution. Sepulveda, 401 F.3d at 1231. Furthermore, a five-day detention during which an alien is not harmed, and the inability to find employment do not compel a finding of past persecution. Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290 (11th Cir. 2006), cert. denied, 549 U.S. 1166 (2007). On the other hand, "intentionally being shot at in a moving car multiple times" constitutes past persecution, regardless of whether the attack is successful. Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1233 (11th Cir. 2007).

Credible testimony of the applicant "may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii); D-Muhumed, 388 F.3d at 818-19.

"The weaker an applicant's testimony, however, the greater the need for corroborative evidence." Yang, 418 F.3d at 1201.

Villavicencio bases her claims of past persecution on the following incidents: (1) her kidnaping in early 1999, (2) her cousin's 2006 murder, perpetrated by a member of the Bolivarian Circle, (3) the 2002 invasion of her parents' home, and the threatening letter left behind, (4) having stones thrown at her and other PV volunteers, (5) her brother's forced resignation and continued inability to find work, and (6) the threatening calls she received as recently as a year ago.

As an initial matter, the murder of Villavicencio's cousin and her brother's resignation do not establish that Villavicencio suffered past persecution, because there is no evidence that Villavicencio herself was targeted or persecuted. Similarly, the 2002 invasion of her parents' home does not establish past persecution, because Villavicencio testified that the break-in was likely a result of her brother's political activities since her brother, at the time, was "part of the opposition part of the government that was the strongest opposition against the government." Thus, the break-in could not be attributed to Villavicencio's own political opinions. See INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992) (holding that the relevant inquiry is whether the persecutor is acting because of the alien's own political opinion). Furthermore, no

7

one was harmed in the break-in, and it is not clear from the testimony whether any of Villivicencio's family's possessions were destroyed. Accordingly, there is not enough evidence to establish that the break-in rose to the level of persecution. The threatening phone calls Villavicencio received also fail to establish past persecution, because verbal threats alone do not rise to the level of persecution. See e.g. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237 (11th Cir. 2006) (holding that a death threat in the form of a "condolence note" indicating that the petitioner should "rest in peace for doing what she shouldn't be doing" constituted harassment, but not persecution).

Villavicencio next points to the stone-throwing incident to support her claims for withholding of removal. Villavicencio's testimony and written statements regarding the stone-throwing incident are very vague, and she does not identify the individuals who threw the stones at her and her friends. Furthermore, although she asserts that some of her friends were injured in the attack, she does not offer any details regarding the extent of their injuries, or offer any corroborating evidence. Thus, although this Court must accept her testimony as credible, the testimony is too vague to establish that this incident rose to the level of past persecution. See e.g. Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (holding that a "minor beating" and brief detention did not rise to the level of persecution).

8

Finally, Villavicencio points to the 2001 kidnaping incident to support her claim for withholding of removal. According to Villavicencio's testimony, the individual who kidnaped her in 2001 was a member of the Bolivarian Circle. She testified that her kidnaper possessed a gun, threatened her life and the lives of her family members, detained her for three hours, punched her, and warned her to cease her political activities. This testimony establishes that there was a nexus between the kidnaping and Villavicencio's own political opinion. See Sanchez, 392 F.3d at 438 (holding that an applicant must show a nexus between her political opinion and the alleged persecution to qualify for withholding of removal). However, this incident does not rise to the level of persecution. Although Villavicencio testified that the kidnaper had a gun and kept her in his car for three hours, she was not severely injured and was eventually released without having to escape. Furthermore, even though a showing of physical harm is not required, the petitioner must still meet her burden by showing that the harm she experienced was severe enough to rise to the level of persecution. See Sepulveda, 401 F.3d at 1231 (holding that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution."). The cases in which this Court has found kidnapings to constitute persecution have involved more serious circumstances than those involved in Villavicencio's case.

Villavicencio also argues that the incidents she experienced, viewed cumulatively, establish that she suffered past persecution. In support of this argument, she cites Ruiz v. U.S. Att'y Gen., 479 F.3d 762 (11th Cir. 2007). Although this Court, in Ruiz, did view the petitioner's past experiences cumulatively in determining whether he suffered past persecution, the circumstances in that case were much more severe, and the evidence presented by the petitioner was much more compelling. See id. at 763-64, 766. In Ruiz, the petitioner was severely beaten on several occasions and was held against his will for 18 days, after which he escaped. Id. at 763-64. He later discovered that his friend, who had been kidnaped with him, was found dead. Id. at 764. Ruiz also presented a police report detailing his beating, medical reports documenting his injuries, a letter certifying that he was an active member of the Liberal party, and his friend's death certificate. Id. at 764. Here, although Villavicencio presented a letter certifying that she was an active member of La Causa Radical, she presented no evidence to corroborate her claims of kidnaping. Although she testified that she was too afraid to report her kidnaping to the police and did not require medical attention, (other than that provided by her sister), she could have obtained statements from her family or friends, or produced her letter of resignation, which would have helped to verify her story.

10

Furthermore, even if Villavicencio did suffer past persecution, the government presented evidence tending to show that Villavicencio could safely relocate within Venezuela.  See 8 C.F.R. § 208.16(b)(1)(i) (providing that a petitioner fails to qualify for withholding or removal relief, even if she has established past persecution, if the government presents evidence that a future threat of persecution can be avoided via relocation).  Villavicencio presented no evidence that the individual who kidnaped her has attempted to contact her since she left Caracas.  Although Villavicencio testified that she did not believe that she could live with her parents in Trujillo because she "could not just remain with [her] hands tied like [her parents] are," she admitted that her family had experienced no persecution and were living in "tranquility" since moving to Trujillo.

Because Villavicencio has failed to establish that she suffered past persecution, she is not entitled to withholding of removal relief, unless she can show that she, more likely than not, would be persecuted upon returning to Venezuela.  See 8 C.F.R. § 208.16(b)(2).  Villavicencio's return visits to Venezuela after the kidnaping incident, as well as Villavicencio's testimony that her family has not been harassed since moving to Trujillo, undercut her claims that she fears future persecution.  Accordingly, because Villavicencio has failed to establish that she suffered past persecution or would, more likely than not, suffer future persecution upon returning to Venezuela, she has failed to show that she is

11

entitled to withholding of removal relief, and we affirm the BIA's denial of her claim for withholding of removal.

**AFFIRMED.**